A06A0547. MANCUSO v. STEYAARD et al.
A06A0724. MANCUSO v. ERNEST HOMES, LLC et al.
(640 SE2d 50)

ADAMS, Judge.

James D. Mancuso purchased a residential lot from Ernest Homes, LLC in June 2001. Mancuso subsequently filed suit, alleging that the septic system on the property had failed and asserting,

among other things, a failure to comply with the disclosure requirements of the Georgia Land Sales Act, OCGA § 44-3-1 et seq. In Case No. A06A0547, Mancuso appeals the trial court's grant of summary judgment to Alice Steyaard d/b/a Re/Max Accent-Richmond Hill, Wanda King, Lani H. Moore, and Lani H. Moore Realty, Inc. (hereinafter referred to as the "Steyaard appellees"). In Case No. A06A0724, Mancuso appeals the grant of partial summary judgment to Ernest Homes, LLC, Ernest Williams and Elizabeth K. Williams (hereinafter referred to collectively as the "Ernest Homes appellees"). In both cases, Mancuso contends the trial court erred in granting summary judgment based upon a finding that the Georgia Land Sales Act was not applicable to the property at issue. We affirm.

Ernest Homes was a builder purchasing and selling lots and homes in the Plantation at Buckhead subdivision in Richmond Hill. Ernest Williams and Elizabeth K. Williams are officers of Ernest Homes. The Steyaard appellees are all real estate agents involved in the underlying real estate transaction. On June 4, 2001, Mancuso signed a "New Construction Purchase and Sale Agreement" to purchase Lot 237 in the subdivision. Exhibit A to this agreement, entitled "New Construction," provides that the property shall be considered "completed" upon the county's issuance of a certificate of occupancy. Although Mancuso contends that Ernest Homes was in the process of constructing a house on the property at the time of the sale, the record indicates that on May 29, 2001, Bryan County had issued a certificate of occupancy for a residential home on Lot 237. The purchase transaction closed on July 9, 2001.

Mancuso filed suit in July 2003 asserting claims under the Georgia Land Sales Act and the federal Interstate Land Sales Full Disclosure Act, 15 USC § 1701 et seq., as well as claims of negligence, fraudulent misrepresentation, stubborn litigiousness and punitive damages arising out of alleged problems with the property's septic system. He subsequently dismissed his claim under the federal act. Mancuso now contends that the trial court erred in granting summary judgment on his claim under the Georgia act.

1. The Georgia Land Sales Act regulates the sale and marketing of subdivided land. Review of Selected 1995 Georgia Legislation, 12 Ga. St. Univ. L. Rev. 321, 321-322 (October 1995). It is unlawful under the act to offer for sale or to sell any subdivided land in Georgia unless a property report containing a list of specified disclosures is provided to prospective purchasers. OCGA § 44-3-3. But these disclosure requirements do not apply to offers or sales of property upon which a house is situated:

[T]he provisions of Code Section 44-3-3 shall not apply to offers or dispositions in an interest in land . . . [o]n which

there is a commercial or industrial building, condominium, shopping center, house, or apartment house; or as to which there is a contractual obligation on the part of the subdivider to construct such a building within two years from date of disposition. . . .

OCGA § 44-3-4 (2). Because the record demonstrates that the property in question contained a house suitable for occupancy at the time of the sale, we agree with the trial court that the property is excluded from the requirements of the Georgia Land Sales Act.

Mancuso argues, however, that the statutory exemption under OCGA § 44-3-4 (2) does not apply to residential property. He asserts that the words "commercial or industrial" in the quoted language must be read as modifying the other words in the list. Under his interpretation, therefore, property containing "commercial or industrial houses" would be exempted from the requirements of the Act, but property containing residential houses would not. We find no merit to this argument. "In construing Georgia statutes, we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, and to give words their plain and ordinary meaning." (Punctuation and footnote omitted.) *Simon Property Group v. Benson*, 278 Ga. App. 277, 281 (628 SE2d 697) (2006). See also OCGA § 1-3-1 (b). Mancuso's proposed interpretation does not follow this fundamental rule as the terms "commercial house" or "industrial house" have no ordinarily understood meaning. Rather, we find that the language of the exemption must be read as excluding from the Act property upon which either a commercial building, an industrial building, a condominium, a shopping center, a house or an apartment house is situated.[1]

2. As we have held the trial court properly granted summary judgment on the ground that Mancuso's property is exempted from the Act, we need not reach Mancuso's remaining enumerations of error.

*Judgment affirmed. Ruffin, C. J., and Blackburn, P. J., concur.*

DECIDED JULY 6, 2006.

*C. James McCallar, Jr.,* for appellant.

---

[1] The Interstate Land Sales Full Disclosure Act similarly exempts improved property from its requirements. See *Winter v. Hollingsworth Properties*, 777 F2d 1444, 1447 (II) (A) (11th Cir. 1985) ("Congress, in passing the statute, desired to protect purchasers from unscrupulous sales of undeveloped home sites. . . ."); *Beauford v. Helmsley*, 740 FSupp. 201, 209 (S.D. N.Y. 1990); *Appalachian, Inc. v. Olson*, 468 S2d 266, 268 (Fla. Ct. App. 2d Dist. 1985); 15 USC § 1702 (a) (2).

Ellis, Painter, Ratterree & Adams, Ryburn C. Ratterree, Margaret Ware Sigman Puccini, Brannen, Searcy & Smith, Ashlee H. Vaught, for appellees.